Sumeer Kakar, Esq.
Kalpana Nagampalli, Esq.
Kakar, P.C.
525 Seventh Ave, Suite 1810
New York, New York 10018
sk@kakarlaw.net
kalpana@kakarlaw.net
(646) 760-7013
Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| YURIY NIKOLAYEVSKIY, individually and derivatively on behalf of RT 130 MOTORS., INC., <br><br> Plaintiffs, <br><br> -against- <br><br> INTERBORO HOLDING, LLC; and OLEG NIKOLENKO, individually. <br><br> Defendants, <br><br> and <br><br> RT 130 MOTORS INC. <br><br> Nominal Defendant. | 23-CV-XXXX <br><br><br> **COMPLAINT** <br><br> **JURY DEMAND** |

Plaintiffs Yuriy Nikolayevskiy ("Nikolayevskiy"), individually and derivatively on behalf of RT 130Motors, Inc. ("Company"), by and through their attorneys Kakar, P.C., hereby bring this Complaint against and Defendants Interboro Holding, LLC. ("Interboro") and Oleg Nikolenko ("Nikolenko" or "ON") (collectively "Defendants") and Nominal Defendant RT 130 Motors, Inc., and alleges on information and belief (unless otherwise self-evident) as follows:

1

## NATURE OF THE ACTION

1. This action arises from Nikolenko's unlawful and outrageous exertion of complete control over the business, assets, and commercial affairs of the Company in order to enrich himself at the expense of the Company and/or Nikolayevskiy.

2. Nikolenko, at all relevant times, undertook a scheme to breach his fiduciary and other duties with complete impunity to line his pockets while engaging in acts to defraud the Company and Nikolayevskiy.

3. While Nikolayevskiy was on vacation, ON engaged in schemes to oust Nikolayevskiy, a 50% owner in the Company, by *inter alia*, (i) withdrawing approximately $80,000 in cash from the Company's account(s) transferred into the Defendants' account(s) and (ii) converting inventoried cars (valued at or about $400,000) from the Company premises to unknown out of state location(s).

4. Defendants jeopardized Plaintiff's business interests by removing New Jersey Department of Motor Vehicles licensing title, and ledger books that by law are to be maintained on the Company's premises and essential for the proper functioning of the automobile dealerships.

5. As such, Nikolayevskiy brings the instant claims individually and derivatively for, *inter alia*, breach of fiduciary duty, conversion, fraud, breach of covenant of good faith and fair dealing therein, and unjust enrichment against Nikolenko and Interboro for the following unlawful acts and/or omissions:

- Diverting $80,000 from the Company to Defendants' account(s);
- Converting about $400,000 worth of cars owned by the Company from the Company's dealership location to an unknown location(s);

- Removing licensing permits, documents and/or title ownership paperwork from the designated dealership location, all of which is required to be maintained on Company premises as a matter of law;

- ON converted Company funds to pay for his personal expenses;

6. Because of Defendant Niklolenko's egregious misconduct, Plaintiffs seek immediate redress of the wrongs set forth in this Complaint both in their individual capacities and derivatively on behalf of the Company.

## THE PARTIES

7. Plaintiff and Nominal Defendant RT 130 Motors, Inc. ("Company") is a New Jersey corporation with its principal place of business at 1400 RT 130 N, Burlington, New Jersey 08016. The Company is a car dealership registered with the New Jersey Motor Vehicle Commission ("NJ MVC") engaged in the business of selling cars.

8. Plaintiff Yuriy Nikolayevskiy is an individual domiciled in the State of New York, in this district. Nikolayevskiy owns 50% of the Company's ownership interests.

9. Defendant Interboro Holding, LLC is a New Jersey limited liability company with its principal place of business in Burlington, New Jersey. Interboro is a vehicle that owns 1400 RT 130 N, Burlington, New Jersey 08016, the real estate upon which the Company's auto dealership is located and operated. Upon information and belief, Nikolenko is the sole member of Interboro.

10. Defendant Oleg Nikolenko is an individual domiciled in the State of New York, in this district. Nikolenko owns 50% of the ownership interests in the Company.

## JURISDICTION AND VENUE

11. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332

3

since the controversy involves citizens of different states and the value of the amount in controversy exceeds $75,000, exclusive of attorney fees, costs, and interest.

12. Venue is proper because a substantial part of the events that gave rise to this matter occurred in this county, district and/or venue, including but not limited to the formation and confrontation of the partnership dispute between Nikolayevskiy and ON, as well as ON's plans to loot the Company.

13. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(2). At all times material hereto, the Parties operated, conducted, engaged in, and/or carried on their business dealings from their homes in this district. The requisite nexus between the Company's business and this action exists. Moreover, Defendants engaged in substantial and not-isolated activity within New York. At all times material hereto, a substantial portion of the events giving rise to this action arose in this judicial district and effected its residents (who are the individual Plaintiff and Defendant).

## THE FACTS

### I. Ownership of the Company

14. On or about October 21, 2016, Nikolayevskiy and Nikolenko formed the Company in New Jersey with 50% ownership interest for each of them as demonstrated through the Company's articles of incorporation and other formation papers.

15. On or about October 2016, Nikolayevskiy and Nikolenko registered the Company as an auto dealership with the NJ MVC as joint owners.

16. Separately, Interboro too was supposed to be formed on a 50% each partnership basis between Nikolayevskiy and ON, which was the vehicle to hold the real estate for the Company's auto dealership.

17. Nikolayevskiy and ON had a simple plan for business and partnership, the two brother-in-law's intended to use the joint funds from the sale of another auto dealership to buy the land (which would be placed in Interboro) and then develop the auto dealership of the Company.

18. While the Company's formation was consistent with both partner's understanding, with each Nikolayevskiy and ON receiving fifty percent (50%) ownership rights, the same is not true of Interboro.

19. ON went behind Nikolayevskiy's proverbial back to form Interboro as a simple member limited liability company, with all the ownership rights in the land running to ON only.

20. Initially, Nikolayevskiy did not know that, while joint funds were used from the partners' previous businesses to purchase property for the Company's dealership and for the development of the dealership, ON excluded Nikolayevskiy from any rights in the real estate, and only limiting Nikolayevskiy rights to the Company, despite the partners' clear understanding of the terms of their partnership and the use of the joint funds for their new business venture at the time—the Company. Nikolayevskiy now knows that ON stole his ownership rights in the real estate owned under Interboro with ON as the sole member.

21. Interboro is a disregarded entity since ON is its sole member.

22. The Company has paid all property taxes, expenses, costs, and dues for Interboro since 2017, thus, given that Interboro is a disregarded entity, ON has been shiponing Company funds for his own real estate expenses all the while misleading and misrepresenting to Nikolayevskiy that he too has ownership rights in the concerned real estate.

23. Nikolayeveskiy and Nikolenko spent approximately $350,000 from the revenue generated from previous joint ventures between the two, with the funds belonging to both, to

purchase land and build the Company to ultimately establish the concerned auto dealership in New Jersey.

24. On or about August 2017, the Company's new auto dealership was built, the Company became fully operational, and Nikolayevskiy started to sell cars at the Company full-time in Burlington, New Jersey.

25. From 2017-2023, Nikolayevskiy has overseen the operations on a day-to-day basis, has personally sold a majority of the cars at the Company, and is working on-site at the auto dealership full time. Alternatively, ON is not involved in the operations, does not sell cars, and rarely works on-site or addresses operational or sales issues.

26. Nikolayevskiy is present at the Company on-site six days a week, his daily tasks include but are not limited to interacting with customers and managing all the paperwork, licensing, and sales of cars for the Company. On a day-to-day basis, Nikolayevskiy is also responsible to maintaining inventory levels and remaining competitive with the buy/sell cycle.

27. Nikolayevskiy created all of the Company's marketing, advertising, and online sales promotions.

28. Nikolayevskiy and Nikolenko jointly made decisions to purchase cars from auction sites, and all decisions to make purchases were either made jointly or Nikolayevskiy purchased the vehicles for the Company account.

29. At all times, Nikolayeveskiy worked more than ON and took on more of the burden to keep the Company sustainable and growing, yet, ON (Nikolayevskiy's brother-in-law) routinely took home daily sales revenue without rhythm or reason, only advising Nikolayevskiy that the disproportional distribution of funds would even out at a later phantom date or distribution.

30. At all relevant times, despite being entitled to 50% of all distributions as a matter of law, Nikolayevskiy received markedly less due to ON's use of the Company's assets and funds as a personal ATM without accountability.

## II. Defendants' Breach and Continued Conversion of the Company's Assets

31. Interestingly enough since ON was barely on site, Nikolayevskiy noticed that Nikolenko harassed and nagged him for being late through the security cameras and asking him to interact with customers while Nikolayevskiy was working on other pressing matters at that exact moment—like discussing costly repairs with mechanics.

32. Nikolayevskiy expressed to Nikolenko that his actions of mistreatment in front of the other staff and employees of the Company was disrespectful, notwithstanding the fact ON's boorish treatment and disrespect was towards a fellow owner of the Company.

33. The altercations and verbal disagreement started to escalate, Nikolayevskiy was not interested in working longer and harder then his partner for less money when they had agreed on equal terms for their partnership. They commenced seperation discussions.

34. Unsurprisingly, Nikolenko made several low offers that Nikolayevskiy refused as the offers were low and did not compensate Nikolayevskiy for his ownership, profits distribution, and contribution to sales in the Company.

35. In 2023, Nikolenko was absent from the Company for over seven months for health reasons, and Nikolayevskiy single-handedly ran the Company. This absence tabled the discussions of business separation.

36. When Nikolenko returned, he resumed his harassment of Nikolenko and started berating him for non-consequential things when he was largely absent from the Company.

37. Additionally, Nikolayeveskiy begin objecting to Nikolenko's unaccounted

withdrawals from the Company and personal credit card expense payments from the Company account.

38. Nikolenko started to act erratically and refused to provide accounting information to Nikolayevskiy, a simple requirement between partners.

39. Due to the ongoing dispute and accounting concerns, the Company, its assets, along with the real estate under the auto dealership (held through Interboro) was listed for sale online and received some offers for $700,000. Thereafter, ON abruptly removed the listing.

40. In September 2023, Nikolenko insisted that Nikolayeveskiy join him at a meeting with their business accountant of over seventeen years because he had decided to switch from the Company accountant to his personal accountant. This change in accounting professionals caused suspicious and reluctancy for Nikolayevskiy.

41. As soon as Nikolenko forced the switch of the Company accountant to his personal accountant, Nikolayevskiy had reduced and limited access to the Company's accounts.

42. Nikolayevskiy continued to be concerned with ON's regular habit to drain the Company accounts and revenue on a regular basis without rhyme or reason. Any efforts from Nikolayevskiy to get a response or accountability led to a screaming and verbal assaults by ON.

43. On November 22, 2023, a day before Nikolayevskiy's scheduled annual vacation, Nikolenko raised the topic of winding down the Company.

44. Nikolayveskiy stated that he would sell his share of the Company to Nikolenko for $650,000, which accounted for the land, the Company (all of its assets) and good will (mostly created by Nikolayevskiy). Nikolenko refused the offer.

45. While Nikolayevskiy was on vacation, he observed that the security camera showed the movement of cars from the property.

46. Distraught, Nikolayevskiy helplessly observed that Nikolenko, with the help of a mechanic he hired, was removing valuable cars that belonged to the Company from the auto dealership.

47. ON removed Company owned cars from the Company's auto dealership that are valued at over $400,000. Put simply, ON illegally and impermissibly pulled out $400,000 of tradable assets from the Company.

48. After Nikolayevskiy returned from vacation, he discovered that $80,000 in Company funds had been wired by Nikolenko to his other controlled accounts outside the Company.

49. Moreover, Nikolenko had removed all the reassignment of title books, licensing, and auto ownership papers that NJ MVC requires to be maintained at the principal place of business—which is the Company's auto dealership. Additionally, Nikolenko also removed all the sales ledgers, trailing balances and other accounting data of the Company.

50. Nikolenko refused to respond to Nikolayevskiy's emails or calls and avoided all communications.

51. On information and belief, Nikolenko has concealed numerous additional instances of conversion and dissipation of corporate assets by concealing detailed information on Company expenses over time.

52. Further, Nikolenko repeatedly threatened to unilaterally loot and liquidate the Company and simultaneously destroy the Company and/or Nikolayevskiy's good will and relationships with customers (and vendors) in order to damage Nikolayevskiy's ability to earn a living.

### COUNT ONE

### Breach of Fiduciary Duty
### (Brought Derivatively by Nikolayeveskiy on behalf of the Company Against Nikolenko)

53. Plaintiffs repeat and reallege each allegation in the preceding paragraphs as if fully set forth herein.

54. Given his position of power, control, access and role as an officer in the Company, Nikolenko owes fiduciary duties to the Company.

55. Nikolenko breached his fiduciary duties to the Company by *inter alia*: (1) asserting total control over the Company, its operations, bank accounts, and cash payment to the exclusion of Nikolayevskiy; (2) allocating for himself the lions' share of Company's valuable car inventory in excess of $400,000; (3) ) converting and dissipating the Company assets on a regular basis; (5) using the Company funds for his own personal benefits; (6) concealing material financial information from Nikolayevskiy; and (7) freezing Plaintiffs out from profits.

56. The Company and Nikolayevskiy were injured as a direct and proximate result of Nikolenko's breaches of his fiduciary duties, and as a result, it is entitled to an award of damages in an amount to be determined at trial, with interest, in addition to reasonable attorneys' fees and costs.

57. Nikolenko's breaches of his fiduciary duties were willful, wanton, malicious, and carried out with a high degree of moral turpitude, dishonesty, and with indifference to his obligations to the Company. Accordingly, the Company is also entitled to recover punitive damages from Nikolenko in an amount to be determined at trial, with interest, in addition to reasonable attorneys' fees and costs.

## COUNT TWO

### Conversion
### (Brought Derivatively by Nikolayevskiy on behalf of The Company Against Nikolenko)

58. Plaintiffs repeat and reallege each allegation in the preceding paragraphs as if fully set forth herein.

59. The Company owns and has the right of sole possession over all the Company assets, including, without limitation, all property and monetary funds.

60. By causing and participating in the misappropriation of the Company's assets and funds as outlined herein, Nikolenko intentionally and without authorization interfered with the Company's right to possess those assets and funds and engaged in acts of conversion.

61. The Company was injured as a direct and proximate result of Nikolenko's conversion. It is entitled to an award of damages in an amount to be determined at trial, with interest, in addition to reasonable attorneys' fees and costs.

## COUNT THREE

### Accounting
### (By Nikolayevskiy Directly Against Nikolenko)

62. Plaintiffs repeat and reallege each allegation in the preceding paragraphs as if fully set forth herein.

63. The Company owns and has the right of sole possession over all the Company assets, including without limitation, all property and monetary funds.

64. A bonafide partnership and/or business relationship exists between ON and Nikolayevskiy. The two sides are partners, family members, and fiduciaries of each other.

65. The foregoing detailed information sets forth that monies, in substantial sums, are owed to Nikolayevskiy and/or the Company, or through the Company.

66. By causing and participating in the misappropriation of the Company's assets and funds as outlined herein, Nikolenko intentionally and without authorization interfered with the Company's right to possess those assets and funds and engaged in acts of conversion.

67. As a direct and proximate result of Nikolenko's conversion, Nikolayevskiy was injured, including through the loss of distributions, salary, benefits, and dividends. As a result, they are entitled to an award of damages in an amount to be determined at trial, with interest, in addition to reasonable attorneys' fees and costs.

## COUNT FOUR

**(Brought Derivatively by Nikolayevskiy on behalf of the Company Against Nikolenko and Interboro)**

68. Plaintiffs repeat and reallege each allegation in the preceding paragraphs as if fully set forth herein.

69. Nikolenko is an officer of the Company, Nikolenko owes fiduciary duties to the Company, and maintains a special and confidential relationship with the Company. In breach of the trust of the Company, Nikolenko took advantage of his role as outlined herein.

70. As an officer of the Company, with commanding control of the finances of the Company and its bookkeeping, Nikolenko is responsible for accounting for the affairs of the Company.

71. Plaintiffs duly demanded that Nikolenko conduct an accounting of the books and records of the Company, but Nikolenko has refused to do so.

72. Plaintiffs have no remedy at law for Nikolenko's aforementioned conduct.

73. By way of the foregoing, it is necessary for Nikolenko to provide a full accounting of the affairs of the Company, as well as restitution and disgorgement for any sum or balance found to be due on the Company's accounts following such accounting, with interest, in addition

to reasonable attorneys' fees and costs.

## COUNT FIVE

### Unjust Enrichment
### (Brought By Plaintiffs, And Each Of Them, Against The Defendants, And Each Of Them)

74. Plaintiffs repeat and reallege each allegation in the preceding paragraphs as if fully set forth herein.

75. Nikolenko and the Company had a direct relationship. Nikolenko was unjustly enriched at the expense of the Company as a result of his misconduct outlined herein. To the extent Interboro is deemed to be an entity that is separate and distinct from Nikolenko, Interboro was unjustly enriched at the expense of the Company as a result of the actions by ON to the illicit benefit of Interboro.

76. It is against equity and good conscience to permit Nikolenko and/or Interboro to retain their ill-gotten gains. The Court should compel Nikolenko and/or Interboro to disgorge to the Company all of their unjust enrichment.

77. Nikolenko and Nikolayevskiy had a direct relationship. Nikolenko was unjustly enriched at the expense of Nikolayevskiy by, at least, allocating to himself the lions' share of the Company's assets valued at about $400,000 and taking no less then $80,000 from the Company's bank accounts without any accounting entry, rhyme or reason.

78. It is against equity and good conscience to permit ON to retain his ill-gotten gains. The Court should compel Nikolenko to disgorge to Nikolayevskiy his unjust enrichment.

79. The Defendants, and each of them, through unauthorized and impressible acts, have unlawfully enriched themselves at the direct harm, expense and damage of the Plaintiffs, and each of them, in an amount to be established at trial.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs request judgment against Nikolenko and Interboro as outlined below, including as follows:

A.  Awarding all monetary damages available at law, including punitive damages, in an amount to be determined at trial, plus interest;

B.

C.  Awarding a full accounting of the affairs of Defendants, as well as restitution and disgorgement for any sum or balance found to be due on its accounts following such accounting, plus interest;

D.  Awarding all attorneys' fees, costs, and disbursements incurred herein to the fullest extent permissible by law; and

E.  Awarding Plaintiff statutory damages and civil penalties, actual damages, consequential damages, treble damages, punitive damages, costs, expenses, and reasonable attorneys' fees for each claim asserted in this Complaint;

F.  Equitable relief in the form of the imposition of an injunction, constructive trust, accounting, and a disgorgement of profits and other benefits received by reason of the unlawful conduct complained of herein;

G.  Awarding injunctive relief in returning operational control, vehicles, dealer plates, and any other assets of Plaintiffs.

H.  Awarding such other and further relief as deemed just, proper, and equitable.

## **JURY DEMAND**

JURY TRIAL DEMANDED Plaintiff hereby demands a trial by jury.

Dated: December 23, 2023

New York, New York

        KAKAR, P.C.

        By: /s/<u>Kalpana Nagampalli</u>
        Sumeer Kakar, Esq.
        Kalpana Nagampalli
        525 Seventh Avenue, Suite 810
        New York, New York 10018
        Telephone: (646) 720-7013
        sk@kakarlaw.net
        kalpana@kakarlaw.net

        *Attorneys for Plaintiffs*